IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 21-cv-

MATTHEW ARNOLD,

      Plaintiff,

vs.

ANTHONY SPURLOCK, JULIE PATEL, and JOHN DOE,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Matthew Arnold, by his attorney Robert M. Liechty of ROBERT M LIECHTY PC, brings his complaint as follows:

1.      Defendant Anthony Spurlock is the Sheriff of Douglas County.  Mr. Arnold has brought a claim under 42 USC §1983 thus establishing federal subject-matter jurisdiction in this court.  Venue is also proper in this court.

2.      Defendant Julie Patel is a supervisor in the Douglas County Department of Human Services (DHS).  The defendant John Doe is an unknown person within DHS or the Sheriff's office who facilitated the continuation of the false and unsupported allegation of domestic violence against plaintiff Arnold.

3.      Plaintiff Matthew Arnold lives in Omaha, Nebraska, while he is attending law school.  He claims damages of over $75,000.  Thus, in addition to federal subject-matter jurisdiction, this court also has diversity jurisdiction.

4.      The relationship between Mr. Arnold and Mr. Spurlock began in February, 2014, when Mr. Arnold's organization, Campaign Integrity Watchdog (CIW), filed a claim of campaign-finance violations against Mr. Spurlock and his candidate committee. In that case, OS 2014-0002, CIW (represented by Mr. Arnold) prevailed and the Administrative Law Judge imposed a $4050 penalty on Mr. Spurlock and his committee. Spurlock's violations made local news, embarrassing Spurlock.

5.      Ever since that litigation and the resultant negative publicity, Mr. Spurlock has borne a personal grudge against Mr. Arnold.

6.      In February, 2019, Mr. Arnold's Campaign Integrity Watchdog was retained to do campaign-finance compliance for a committee organized to recall Mr. Spurlock from office.  This aggravated the personal grudge.

7.      The instant case has to do with Mr. Spurlock's revenge against Mr. Arnold by interfering in a domestic matter involving Mr. Arnold and his former wife and his children.  As a result of that unlawful interference, Mr. Arnold was substantially, and unlawfully, separated from his children, ages two, four, and six, for over seven months.

8.      In February, 2019, Mr. Arnold's wife voluntarily committed herself for mental health care.  She suffers from a variety of mental health illnesses.  As part of that commitment, she made statements that triggered a Douglas County Child Protective Services (CPS) investigation of her and Mr Arnold.  CPS is part of DHS.  This investigation returned no findings.

9.      On July 12, 2019, his wife was arrested for DUI and child abuse because the children were in the car when she was driving erratically while under the influence of

prescription medication. This triggered another CPS investigation. His wife again voluntarily committed herself for mental health treatment.

10.    As a result of the CPS investigation, Douglas County filed a dependency and neglect case against her in September, 2019, case no. 19 JV 235. As a result of that case being opened, Douglas County CPS actively monitored Ms. Arnold for dependency and neglect, required her parenting time to be supervised, imposed a written safety plan to monitor her conduct, and appointed a guardian *ad litem* for the children.

11.    On January 6, 2020, there was a court hearing awarding Mr. Arnold full custody of his three children, in which the court stated that "It is in the best interests of the children that custody of the children remains with the Respondent Father, subject to protective supervision by the Douglas County Department of Human Services."

12.    On the evening of Sunday, January 12, 2020, Mr. Arnold's wife snapped and physically assaulted Mr. Arnold. A friend acting on her behalf called the Douglas County Sheriff's office. Two deputy sheriffs came to their home and Mr. Arnold explained that the two of them had a disagreement regarding bringing the children in to the house at 8:00 p.m. Mr. Arnold wanted her to help, but she was occupied with her cell phone. She admits that she slapped him. The deputies left without making an arrest.

13.    On the following morning, Monday, January 13, 2020, Mr. Arnold contacted CPS to tell them what had happened the previous night. They agreed that the kids would stay with Mr. Arnold while his wife would stay with her mother.

14.     Later that Monday, Ms. Arnold and her mother went to the CPS to make a complaint against Mr. Arnold.  The following allegations come from the affidavit for arrest warrant.  Upon arriving at home, Mr. Arnold took things into the house and Ms. Arnold sat in the car checking social media on her phone.  Because Ms. Arnold was not helping, Mr. Arnold allegedly tried to grab her phone and pull her out of the truck.  He then allegedly grabbed her by the neck and tried to throw her to the ground.  Ms. Arnold slapped Mr. Arnold two times.  She admitted that she should not have slapped him and admitted that she overreacted.

15.     When Mr. Arnold allegedly pulled Ms. Arnold out of the car, one of her earrings came out of her ear.  There was no mark on her ear nor was there any mark on her neck.  She admits that she received no injuries.  There was no allegation that a child had witnessed the incident.

16.     That afternoon, CPS called Mr. Arnold to its offices under a pretense of desiring to talk with Mr. Arnold about future safety plans.  It seized custody of his three children.  In a custody hearing on January 15, the children were put in the temporary legal custody of CPS and in physical custody of his wife's cousin.

17.     Also on that Monday, January 13, the Douglas County Sheriff's office began an investigation to charge Mr. Arnold with domestic violence.  There are emails showing that Sheriff Spurlock himself was involved in the investigation, which should have been in the hands of lower-level staff.  On January 14, Sheriff Spurlock found a post on the wife's Facebook page describing her story of what had happened on January 12.  Sheriff Spurlock was involved in the case because he wanted to press

charges against Mr. Arnold as revenge for Mr. Arnold's successful litigation against Mr. Spurlock.

18.     On January 14, 2020, the Arnolds filed for divorce.

19.     A Temporary Custody Order was issued on January 15, 2020, in the above case no. 19 JV 235, based upon Mr. Arnold's alleged (but unfounded) domestic violence.

20.     On Friday, January 17, 2020, Capt. Duffy emailed to Sheriff Spurlock a copy of the affidavit supporting the arrest of Mr. Arnold.  The Sheriff's office referred the affidavit to the district attorney.  On Wednesday, January 22, the district attorney refused to file charges of harassment/domestic violence due to lack of credible evidence.

21.     Nonetheless, from that point for the next nine months, Mr. Arnold could see his children only under supervision and only for limited time.

22.     On March 3, 2020, six weeks after the DA declined to file charges, DHS filed a Notice of Action closing as inconclusive the dependency and neglect claim against Mr. Arnold in case no. 19 JV 235.  This notice was signed by caseworker Erin Wetherbee.  These notices are always approved by a supervisor before they are issued.

23.     Mr. Arnold immediately requested the return of his children and restoration of legal custody to him pursuant to the January 6, 2020, court order.

24.     On March 8, 2020, DHS reversed itself in a document signed by defendant Patel.  It stated that Mr. Arnold's wife's allegation of abuse had been confirmed and that Mr. Arnold was identified as the person responsible for the incident

of child abuse or neglect that his wife reported to the county on January 13, 2020.  The only evidence supporting this allegation were the unfounded allegations in the affidavit for arrest warrant generally referenced in ¶¶ 14 and 15 above.

25.     According to an attorney who has experience with hundreds of these cases, such a reversal never happens absent new evidence.  There was no new evidence in this case.

26.     The only explanation for the March 8 reversal is improper influence upon the process.  The document reopening the matter stated that DHS had confirmed the wife's allegations of child abuse.  As described below, this was based on a false statement that the Sheriff's office had reopened the investigation.

27.     The Sheriff's office did not reopen the investigation, but defendants made it seem as if Mr. Arnold remained under investigation for domestic violence regarding the January 12 incident.  Ms. Patel approved reopening the claim against Mr. Arnold even though she knew there was no basis to reopen the claim.

28.     Beginning on February 6, 2020, Mr. Arnold reported to monthly family-planning meetings involving DHS personnel such as caseworkers Joi Johnson and Erin Wetherbee and supervisors Julie Patel and Melinda Spalding.  He would ask them upon what basis his wife's allegation of abuse had been confirmed and they would reply that the Sheriff's office was looking into it.  This was false because the Sheriff's office case report, prepared on April 27, 2020, indicated no such reopening of any investigation.

29.     In a hearing before Magistrate Moss, on April 27, 2020, Magistrate Moss stated that the children could be returned to their father if it was found to be in the best

interest of the children.  She stated that this was a standard order she issues in all cases of this nature.

30.     The guardian *ad litem*, Theresa Higgins, approved returning the children to the custody of Mr. Arnold, but the Department of Human Services, represented by assistant county attorney LeeAnn Reigrut, refused to approve their return.  There was no reason for such a refusal except for an improper outside influence.

31.     A hearing initially scheduled for approximately July 31 was postponed because DHS insisted on Mr. Arnold completing and submitting results of a psychological evaluation.  There was no need for this evaluation because there was no reasonable ground to believe that Mr. Arnold had committed domestic violence on his wife nor was there any reason to believe that a child had witnessed any domestic violence in order to establish an "injurious environment."

32.     The delayed hearing before Magistrate Moss finally took place on October 21, 2020.  In that hearing, Ms. Reigrut initially asked that joint custody of the three children be returned to the parents, but supervised by DHS.  She admitted that a psychological evaluation of Mr. Arnold stated that no treatment was recommended for him.

33.     Magistrate Moss noted that DHS would never have the parents work out parenting time, as DHS was doing, if DHS truly believed that Mr. Arnold was a domestic-violence perpetrator.  Magistrate Moss also held that there was no credible evidence that Mr. Arnold had committed the alleged domestic violence on January 12,

2020.  The court returned unsupervised custody of the children to the parents on October 21.

34.     The actions of defendants unlawfully deprived Mr. Arnold of full access to his three children for 7½ months, from March 8 until October 21, 2020.

35.     On December 9, 2020, the court stopped any further county supervision of the children, dismissed case no. 19 JV 235, and terminated the guardian *ad litem*.

36.     As a result of these proceedings, Mr. Arnold had to pay $5000 for a psychological evaluation unnecessarily required by DHS and over $60,000 in attorney's fees.

37.     Mr. Arnold also suffered psychological pain-and-suffering for being separated from his children and for having to undergo numerous hearings to protect his familial rights.  He was in weekly therapy for this pain-and-suffering from May, 2020, through July, 2021.

### *Deprivation of Constitutional Rights under 42 USC §1983*

38.     At all times herein, the actions of defendants were done under color of state law.

39.     Defendants Spurlock and Patel caused Mr. Arnold's continued prosecution for domestic violence or dependency and neglect or both in case no. 19 JV 235.  The original action terminated in favor of Mr. Arnold on January 22 when the district attorney refused to file charges and, later, on March 3 when DHS filed the Notice of Action.  Mr. Spurlock's influence and collusion with Ms. Patel caused DHS to continue the matter on March 8, 2020, even though there was no credible evidence to support the wife's claims

against Mr. Arnold regarding what happened on January 12 and even though the Sheriff's office did not reopen its investigation.

40.     Defendants deprived Mr. Arnold of his constitutional liberty interest in his familial rights, a violation of 42 USC §1983.

41.     Mr. Arnold sustained damages as described in ¶¶ 36 and 37.  He is entitled to his attorney's fees under 42 USC §1988.

### Malicious Prosecution under §1983

42.     Defendants unlawfully caused Mr. Arnold's continued prosecution for domestic violence or dependency and neglect or both in case no. 19 JV 235.  There was no probable cause to extend this prosecution.  As a result, he was denied full access to his children.

43.     Defendants acted with malice because they knew that they had no evidence to support the continued claims against Mr. Arnold.  This continuation of the claims violated the fourth amendment.

44.     Mr. Arnold suffered damages as stated in ¶¶ 36 and 37 above.  He is entitled to his attorney's fees under 42 USC §1988.

### Violation of CRS §13-21-131

45.     The General Assembly created a civil action for deprivation of rights under article II of the state constitution effective as of June 19, 2020.  This act applies to peace officers such as defendant Spurlock.  Statutory immunities and limitations do not apply to claims brought under this section nor is qualified immunity a defense to liability pursuant to this section.

46.     Defendant Spurlock deprived Mr. Arnold of his rights as a criminal defendant under article II, §16, and of his due process rights under article II, §25.  He is liable for any constitutional deprivation that occurred after June 19, 2020.

47.     Mr. Arnold suffered injuries as stated in ¶¶ 36 and 37 above and is entitled to his attorney fees under §13-21-131(3).

WHEREFORE, plaintiff Matthew Arnold respectfully requests that this court grant judgment in his favor and for costs, interest, attorney's fees, and such other relief as this court may deem proper.

Plaintiff requests trial to a jury

Respectfully submitted this January 5, 2022.

By:     s/     *Robert M. Liechty*
                Robert M. Liechty
                ROBERT M LIECHTY PC
                1800 Gaylord St.
                Denver, Colorado 80206
                Tel: (303) 861-5300
                Fax: (303) 861-2746
                Email:  rliechty@crossliechty.com
                ATTORNEY FOR PLAINTIFF

Address of plaintiff:
315 N. 34th St., Apt. 205
Omaha, Nebraska 68131