**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Case No. 22-cv-0026-DDD-SKC

MATTHEW ARNOLD,

    Plaintiff,

vs.

ANTHONY SPURLOCK,
JULIE PATEL, and
JOHN DOE,

    Defendants.

---

**ORDER GRANTING IN PART MOTION TO DISMISS**

---

After a series of incidents involving Plaintiff Matthew Arnold and his then-wife in 2019 and early 2020, officials in Douglas County, Colorado, sought and received an emergency court order removing the children from their custody. Mr. Arnold does not challenge that original removal, but filed this case because he believes the Defendants unlawfully extended their investigation and deprived him of custody of his children from March through October 2020, when they were eventually returned. His Complaint lists three claims: two under 42 U.S.C. § 1983 for violation of his "constitutional liberty interest in his familial rights" and for malicious prosecution, and one under §13-21-131 of the Colorado Revised Statutes. Doc. 1 at 8-9.

The Defendants moved to dismiss the claims, arguing that the allegations in the Complaint do not plausibly state claims against them and

- 1 -

that they are protected by qualified immunity. Doc. 8. The motion is denied.

## BACKGROUND

According to the Complaint, Mr. Arnold's ex-wife suffers from a variety of mental health issues which led to a Douglas County Child Protective Services investigation in February 2019. Doc. 1 at 2. This investigation did not result immediately in any action taken against the Arnolds. *Id.* Then, in July 2019, Mrs. Arnold was arrested for DUI and child abuse because she was driving erratically while under the influence of prescription medication with their children in the car, leading to another CPS investigation. Doc. 1 at 2-3. This resulted in a dependency and neglect case being filed in September of that year. On January 6, 2020, a state court held a hearing at which it limited Mrs. Arnold's parenting rights and appointed a guardian *ad litem* for the couple's children. *Id.* at 3. Mr. Arnold was awarded custody of the children, "subject to protective supervision by the Douglas County Department of Human Services." *Id.* Six days later, Mr. and Mrs. Arnold had a disagreement that led to the Sheriff's office being called and responding to the home. No arrests were made, but the Arnolds both contacted CPS over the next few days. Mrs. Arnold also sought an arrest warrant, alleging that Mr. Arnold had pulled her out of her truck, "grabbed her by the neck, and tried to throw to the ground." *Id.* at 4. She also put a post on Facebook making similar allegations, which Sheriff Spurlock apparently saw, and on January 13, the Sheriff's office began an investigation. *Id.* CPS removed the three children from their parents and the court handling the dependency and neglect case put them in legal custody of CPS and physical custody of a relative. *Id.* The children remained in that situation until October, 2020, when the court returned them to the parents. *Id.* at 7-8.

On that much, the parties agree. The parties also agree that the initial January removal of the children was lawful. See Doc. 9 at 1. The disagreement is over what happened in March. According to Mr. Arnold, "Prior to March 8, plaintiff acknowledges that DHS could lawfully investigate the dispute between his wife and investigate whether either side abused the children." *Id.* But, he says, in early March, "DHS filed a Notice of Action closing its claim against" him. *Id.* at 2. He alleges that despite this, on March 8 Ms. Patel signed a document reversing that decision, and this, he says, "is where the constitutional violation began." *Id.* His position is that there was no legitimate reason for Ms. Patel to do so, and that it was not according to established process. He contends that the only explanation is that she was pressured to do so because Sheriff Spurlock had a "personal grudge" and wanted "revenge against Mr. Arnold" for having worked against the sheriff's political campaigns. See Doc. 1 at 2.

The Defendants' motion makes a number of valid points. First, the malicious prosecution claim is suspect because Mr. Arnold does not challenge any prosecution at all and provides no authority for the theory that the continuation of a dependency and neglect case can support this sort of claim. The case he leans on, *Jensen v. Wagner*, involved actual criminal convictions that arose from a dependency and neglect case, and the court never clearly addressed the issue Mr. Arnold argues here. 603 F.3d 1182, 1195 (10th Cir. 2010). The allegations, even when credited as true, do not satisfy the elements of malicious prosecution. *See Id.* at 1194 (citing *Wilkins v. DeReyes,* 528 F.3d 790, 799 (10th Cir.2008)). Mr. Arnold's malicious prosecution claim is therefore dismissed with prejudice.[1]

---

[1] This same deficiency in failing to allege a criminal prosecution applies

More broadly, when qualified immunity has been invoked, it imparts on the plaintiff a heavy two-part burden. He must show (1) the facts support a violation of a constitutional right, and (2) that right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194 (2001). The case relied on for this purpose by Mr. Arnold is not quite so helpful as he contends. *See Malik v. Arapahoe Cnty Dept. of Social Svcs.*, 191 F.3d 1306, 1316 (10th Cir. 1999) (county officials may not take custody of child "'through distortion, misrepresentation and omission'"). While the *Malik* court did hold that the law is clear that officials cannot remove children from parents based on misrepresentations, it emphasized that its conclusion hinged upon the fact that the "defendants acknowledged [the child] was in no imminent danger at the time they sought the order and the facts suggest it was secured only through distortion, misrepresentation and omission." *Id.* at 1315 n. 5 (quotation omitted, emphasis added). The court explained that its decision "by no means restricts the authority of law enforcement and child protective officers to seek protective custody of a child when they have legitimate concerns for the child's safety." *Id.* Because Mr. Arnold has conceded the legitimacy of the Defendants' actions in removing his children at the instigation of the proceedings, these circumstances do not fit within *Malik*.

*J.B. v. Washington County* presents a better, if broader, foundation to show that Mr. Arnold's rights were clearly established and violated by an unjustified re-opening. 127 F.3d 919 (10th Cir. 1997). In that case, the Tenth Circuit held that "[t]he forced separation of parent from child,

---

to Mr. Arnold's claim arising from Colorado Revised Statute §13-21-131. That claim is dismissed to the extent it relies on the deprivation of his rights as a criminal defendant under Colo. Const. Art. II §16. The statutory claim may continue only insofar as it rests on deprivation of due process rights under Colo. Const. Art. II §25.

even for a short time, represents a serious impingement upon both the parents' and child's rights." *Id.* (quoting *Jordan v. Jackson,* 15 F.3d 333, 346 (4th Cir.1994)). Such a serious interference into the familial rights of a parent can only be justified if supported by due process. *Id.* That much is clearly established by longstanding case law.

The facts are simply too uncertain at this point to grant the motion. If the facts are as Mr. Arnold alleges, they show just such an interference, without any supporting due process. Even if Ms. Patel's reason for reopening the case were not tainted by allegations of undue influence,[2] Defendants' explanation depends on factual allegations that I cannot accept at this stage. *See Ashcroft v. Iqbal, Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 562 (2007). So Defendants cannot succeed under qualified immunity at this early stage in the case.

I agree with the Defendants that it is proper to consider the court records from the underlying dependency and neglect case, given that they are public records central to the allegations in the complaint. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997). The problem is that the records are not clear enough to dismiss the case at this

---

[2] To the extent it is relevant, I am not convinced Mr. Arnold's allegations about Sheriff Spurlock's malice are particularly powerful. Mr. Arnold's allegations that he was a political opponent of the sheriff are well-pleaded and accepted as true, but Mr. Arnold's assertions that this led the Sheriff to be "embarrassed" and hold a "personal grudge" that led him to improperly interfere in a child protection investigation are assumptions and speculation of the sort that need not be credited. See *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 562 (2007). Sheriffs and other public officials are likely to have all sorts of opponents, but that does not mean those opponents can overcome a motion to dismiss simply by alleging that an action they oppose must have been done for improper reasons.

early stage. The Defendants' central argument is that two days prior to Mr. Arnold's alleged March 8 change of heart, on March 6, the state court had already ordered custody to remain with DHS until a fall target date. *See* Doc. 10 at 5. But the date of that court order is 04/06/2020, which is April 6, not March 6. Doc. 8-2 at 4. So the order does not support Defendants' position, nor does it directly undermine Mr. Arnold's well plead allegations.

It also appears certain things were going on in that case that are not reflected in the minute orders provided.[3] And the orders themselves are not easily deciphered, leaving me unable to say with certainty what all was going on in the case.[4] Mr. Arnold's complaint includes very specific allegations about filings being entered during that time period. *See* Doc. 1 at 5. The record supplied by Defendants undermines some of his case, true, but is too unclear to justify dismissing it entirely at this point. Further discovery may or may not show that Mr. Arnold's allegations are unsupported by the evidence, and the deprivation of his familial liberty supported by due process. At that point, it may be sensible to reexamine whether qualified immunity bars Mr. Arnold's claim.

## CONCLUSION

Defendants' motion to dismiss (Doc. 8) is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs Malicious Prosecution Claim is **DISMISSED WITH PREJUDICE**. Defendants may, if they believe it

---

[3] For example, the 04/27/2020 minute order mentions an "amended treatment plan filed on 03.25.2020," but there is nothing in the record reflecting the plan, any hearing that date in March, or anything else about it. The orders also note a related case number 2020CV20438, but do not explain what relevance it might have, if any.

[4] One particularly wishes the court would turn off the Caps Lock key.

- 6 -

is appropriate and justified, file a motion for summary judgment prior to the close of discovery.

Dated: December 5, 2023.     BY THE COURT:

_____
Daniel D. Domenico
United States District Judge

- 7 -